Good morning, everyone. This is my first time here, so I apologize if I'm a little bit nervous. No problem. If you just can introduce yourself or we have that on the record, you may proceed. Thank you. My name is Joan Dovalle. I'm here representing the petitioner, Andy Rodriguez, on the decision of the immigration judge and the Board of Immigration Appeals denying his request for withholding of removal and protection under the Convention Against Torture. One of the main reasons that the Board and the judge denied, it was based on that they didn't consider that the proposed particular social group, given Guatemalans with tattoos, that will be perceived as gang members as a particular social group as expressed. And they detail the case law in Arteaga and in matter of EIG, but they fail to not doing the proper analysis. But even before you get to that, you have a not insignificant hurdle involving timeliness. Timeliness? Whether the application for asylum was timely filed. Yes, that's correct, Your Honor. And that's one of, well, the reason that he didn't qualify for asylum, unfortunate. He was brought here to the United States when he was only three years old. Right. Unfortunate for this person, his parents, meaning his mother and his stepfather, filed for asylum separately. Eventually, the asylum application that moved forward was the one with the stepfather. For some unknown reason, both him and his sister were not in that application. And it's very shameful and it upset me a lot. And the reason that I took this case pro bono and from my heart and have kept on going on this, because his family has not been very cooperative from the beginning. And the first beginning was this. This person should not even be here and should not be here protecting his danger to go back to Guatemala, if his family has done the right thing at the right moment. It took a long time for me to be able to obtain a copy of the record for the father. I was never able to obtain the records of the mother or the complete record whatsoever. This case was continued many times because the judges understood that there should be something there. There are many things that could have been done besides this application. This person entered here with a visa. My understanding was that you appreciated that problem with his timeliness, so that what you were appealing really related to his withholding of removal. Is that right? That's correct. So asylum isn't, at least it wasn't in your brief, because you were really looking at withholding of removal. Of course, yes. Okay, thank you. I was approaching the timeliness because we argued that on the judge. But unfortunately, because there was no certainty, and the judge on his decision actually mentioned it, that it wasn't clear, even though that the mother applied for asylum, whether those documents included him, was not included him, it was timely. So that's why asylum was out of the question, unfortunately, at that time. I mean, this is unfortunate, because the stepfather got asylum, correct? Both of them are residents, and I believe that the stepfather is a U.S. citizen now, which is very unfortunate because they abandoned not only Mr. Rodriguez, but his sister, too. She's right now a recipient of DACA, but she could be a U.S. citizen by now. And she's a very, you know, thriving. And that will have started the beginning of all the situations that this poor man went through in his life, because being here undocumented has zero possibilities of many other options that he will have, whether if his parents have acted properly. He didn't ask to come here. He was just three years old when he came to the United States. And year after year, they did his paperwork, they proceeded to have a green card, they proceeded to apply for citizenship, but they never applied. I believe that in 2003, there was some kind of documents that the stepfather tried to make an attempt to file some sort of application for asylum lately for him, but never was follow-up. You had mentioned earlier this, you know, the difficulty which I think we face, and you also have to overcome are these cases we have, for example, on tattoos not being a legitimate basis, Arteaga. How would you propose that the court would get around that fairly straightforward ruling that that can't be the basis for a social group or for the grant? Well, there is a persuasive Seventh Circuit law in Benitez Ramos, where they established that a group of former gang members was deemed cognizable in the society. So if the Seventh Circuit understood that a former gang member can be persecuted, a person that is going to be perceived as a possible gang member and is going to have an imputed gang membership, it can be considered a particular social group. This person, Mr. Rodriguez, has 60% of his body covered on different types of tattoos, tattoos that he cannot cover because he has in the neck, in the arms, in the hands, all over his body. So it's not a possibility to say, oh, he's going to be doing laser or he's going to cover them with clothes because it's not a possibility. Given the factors that when a person goes to the consulate to ask for a visa, the government of the United States can deny that person based on the reason to believe that the person is a gang member, even if they have never been involved in gang, even if they have never had any convictions, even if they have never been even arrested. But the government perceived them as gang members just because of the tattoos, and that we are talking about the United States, that tattoos are considered here an expression of art, an expression of feelings in a certain time of a person's life. In Guatemala, unfortunately, there are two types of people that have tattoos. There are either the indigenous people that have tattoos based on their roots or the gang members. Tattoo is not looked in Guatemala society as an expression of art or as an expression of the feelings of a person. Rather, this person has a tattoo, so obviously has to be a gang member or was a gang member. This person is 27 years old. So not only he has tattoos, he's on the target, the perception of a society, what a gang member is. Gang member usually in Guatemala look to age as young as nine years old, and usually it can end until the end of their lives, but usually the time frame is between the nines and the 40. Would you want to save the remaining time for rebuttal? Before you sit down, let me ask you one question. Your client is detained? Yes. And he's been detained for how long? Three years, and he has preferred to be detained than to be sent to Guatemala to be killed. He says that he has to spend his years detained in the United States. He prefers that than to be killed in Guatemala. And what are the consequences? Are you then still seeking voluntary departure? What's the status of that? No, Your Honor. He doesn't want the voluntary departure. That's what I start expressing his fear to go back. Thank you. May it please the Court. James Hurley for the Attorney General. This case should be denied in part and dismissed in part. It should be denied because substantial evidence supports the denial of withholding of removal, because Petitioner could not establish a cognizable particular social group or a nexus between the harm he claimed and a protected ground. Substantial evidence also supports the denial of cap protection, where he did not establish that he would more likely than not be tortured by or with the acquiescence of the Guatemalan government. I'd also like to mention that it should be dismissed because this Court lacks jurisdiction to review the discretionary determination that he wasn't entitled to voluntary departure, but it seems like she's waived that argument, so we're past that. So with respect to the denial of withholding, Petitioner's proposed social group of Guatemalans with tattoos that will identify him as having a gang affiliation lacks the particularity and the social distinction required to qualify as a cognizable particular social group. His second particular social group, the proposed one of Guatemalan returnees from the United States, similarly lacks the requisite particularity and social distinction within... Does he have any family or any roots in Guatemala? He does not. I don't know exactly. The record contains information about a cousin of his being killed recently, and then he talked about... He spoke with people who knew his cousin, so I think he might have some relatives down there, but I'm not sure. I think his mom and his stepfather are here, along with his siblings and his wife and children. I don't understand why he... They just neglected all these years. They got relief for themselves, but not for their children, and this... I can't explain. I just... I know... What's your sense of what was going on? The record just has a... His mother applied for asylum in 1993, and then he got here in 95, but then his stepfather applied for asylum, and that was granted in 1999. So he was lawfully admitted. He came here on a visa, but he overstayed, and that's the removability charge. And I don't know why his mother got status through his stepfather, but he didn't... They didn't apply for him for some reason, but they did later, and it was denied because it was untimely. There was a joining, following to join provision that I guess his stepfather or mother could have applied for status for him, but they didn't do it within the deadline, and that was in 2003. So that's the extent of what I know. And then moving on from the withholding part, substantial evidence also supports the denial of CAT, because he hasn't shown that it was more likely than not that he would be tortured should he return to Guatemala. Again, the immigration judge and the board reviewed the facts, and they found that there was no past torture. He left when he was a kid, and all of his claims of future torture was speculative. He claimed that this would happen, but he had no proof that he would... There was an individual risk that he would be tortured by or with the acquiescence of the Guatemalan government. I think his basis, as I understand it, the basis of making the claim is he knows what happens to people who have the same problems that he has. Tattoos, I assume they were voluntary tattoos, but he's got a high percentage of his body tattooed, and he thinks that will expose him to damage. Is that anything we should consider? No, I think it's important that the petitioners come and they say, I'm going to be subject to persecution or torture based on these tattoos. And this court has repeatedly held that you don't qualify as a cognizable social group based on these tattoos, because there was no... It's got to be particular, meaning that it can't be amorphous or diffuse or subjective, and it's got to be socially distinct, showing that Guatemalan society views people with tattoos as a distinct group. And this court has repeatedly held that it doesn't meet that criteria for that. If there are no further questions, we ask for the foreground reasons and based on the government's brief that this court should deny in part and dismiss in part the petition for review. Thank you. I reject the assumption of the government that there is no particularity. As I expressed before, the society in Guatemala does look people with tattoo in a different way. There are even advices in different websites that even the government stopped tourists with tattoos for bribes and possible arrest. Different blogs from different people, travel, even express that they have to cover when they know that they're going to go. How is the situation with your client, which is, you know, you have considerable equities trending in your favor, but how is the situation with your client different from those that the prior decisions of this court considering tattoos have foreclosed? That's a problem I have. Because it hasn't been defined on the particularities of how the society look at them, what the society do, what the government do, and what the people do with the acquiescence of the government. It has been very well known that the government in Guatemala has been unable and unwilling to attack the problems that they have with the gangs. Is that in a country report at all? Is that documented? I mean, I don't gainsay your assertion about that, but we need more information. That doesn't really get you over the hurdle. Is there anything in the country report that substantiates what you've just told us? About the government, yes. Yes, and about the tattoos. Yes, Your Honor. Unfortunately, because of the time frame that I have to abide, but the country conditions express what the government does. With respect to tattoos? Not necessarily in the country conditions, but I submitted plenty of evidence in support of my appeal, with the board, and when I was in front of the immigration judge, that support how the people with tattoos, and I just mentioned one in particular, that even people that just traveled from the United States are advised to cover their tattoos, if they are going to be going to certain places in Central America, including Guatemala. Because they are going to be perceived, you don't have to cover your tattoos if you are just traveling, if not there is a perception in society that there is going to be a problem. And when there are other people that have expressed how the police has stopped them, just for bribery, just because they have tattoos, and they don't even live there. You know the difficulty you've got is that nobody tattooed him, he volunteered to have his tattoos, didn't he? He's a tattoo artist, and at no point he thought that any time in his life he would have to go to Guatemala. He was living here in the United States where it's free, and that was his job when he was 18, doing tattoos, and some of the tattoos he did himself. And unfortunately he falls between the cracks because of his parents' conduct. That's an unfortunate part on this particular case, because he could have been a U.S. citizen by now, and probably none of this have ever happened, because if we talk about the criminal activity that he had, he tried to survive without having a work permit, and without having the support of the parents that didn't do what they were supposed to do when they bring him here as a child. Thank you. I think we have your argument in mind. The case just argued, Rodriguez v. Barr, is submitted. Thank both counsel for your arguments this morning. Also thank you particularly for your pro bono representation, Mr. Rodriguez. Thank you for the panel to listen to me today. Have a wonderful day, everyone. Our next case for argument is United States v. Jackson.
judges: Parker, Farris, McKeown